IN THE MATTER OF THE PETITION OF CHARLES E. MORRIS, AS EXECUTOR AND TRUSTEE OF GEORGE H. THOMPSON, TO SELL OR MORTGAGE REAL ESTATE.

*Trustees — when they will be authorized to mortgage or sell trust real estate to pay extraordinary assessments.*

In 1884, George H. Thompson died and left a will, by which he gave his wife the use for life of all his real and personal estate "after deducting therefrom the sum necessary to keep such real estate in proper repair, and to pay the taxes, assessments and liens thereon." Part of his estate was land near Rochester, at the time of his death of little value, which subsequently rose in value very rapidly, though not built upon, and heavy assessments were imposed upon it for street improvements to such an extent that if the widow were to live in the style in which her husband had, the payment of such expenses and of the assessments would have consumed much more than the income of the entire estate.

Upon an application made by a trustee, who was given power to care for the real estate and pay over the net income, for leave to sell or mortgage the real estate to pay the extraordinary assessments:

*Held,* that as the court inferred from the will that the testator intended his widow to live as she had before his death, the language of the will would be taken to mean that there should be deducted from the gross income only such taxes and assessments as the testator had been accustomed to pay thereon in his lifetime, and that it was a proper case in which to authorize the trustee to mortgage the property or to sell a part thereof. (R. S., pt. 2, chap 1, tit. 2, art. 2, § 65, as amended by chapter 257 of the Laws of 1886.)

APPEALS by Herbert Morris, Ralph Morris and Edward Morris, infants, by Henry W. Conklin, their guardian *ad litem*, and by Jeanette M. Morris and David Z. Morris, all being parties to the proceeding, from an order, entered in the office of the clerk of the county of Monroe on the 9th day of November, 1891, granting leave to Charles E. Morris, as trustee of George H. Thompson, deceased, to mortgage or sell certain lands of the deceased to pay certain assessments thereon, except so much of said order as directed the trustee to pay out of any funds in his hands to the guardians *ad litem* of the infants the sum of fifty dollars each.

The gross income of the real estate was $9,300. The net income of the widow was $4,000. The lands were unproductive and there were no buildings upon them.

The testator, by his will, provided, among other things, as follows: Section 1. I give to my wife, Carrie L. Thompson, the use, during

the term of her natural life, of all of my real and personal estate after deducting therefrom the sums necessary to keep such real estate in proper repair, and to pay the taxes, assessments and liens thereon.

Section 2. I give and devise to my adopted son, George Mathew Thompson, the use, during his natural life, of the real estate next hereinafter described, but he is, in no event, to take the same before he reaches the age of twenty-four years. In case my said wife should die before the said George Mathew Thompson reaches the age of twenty-four years the said real estate, the use of which is hereby devised to him, shall remain in the hands of my executor, whom I hereby constitute a trustee, to hold the same and take charge of it, who shall pay such portion of the net use or rents of such real estate over to said George Mathew Thompson as shall be necessary for his support and education, and invest the residue of such use, if there be any, in bonds and mortgages on unincumbered real estate. And I direct my executor and trustee to pay to said George Mathew Thompson all the net rents and profits of the real estate described in this subdivision of my will when he shall arrive at the age of twenty-four years, but not in any event until after the death of my said wife, Carrie L. Thompson; such payment to be made annually, semi-annually or quarterly as shall be most convenient. * * *

*Lastly.* I make, constitute and appoint Charles E. Morris to be executor of this, my last will and testament. And I hereby constitute the said Charles E. Morris a trustee, for the purpose of carrying the provisions of this instrument into effect and give him full power to take possession after my death of all my property, real and personal, to convert the personal property except household furniture into money and to take possession and charge of all my real estate during the life of my said wife, and to pay over to her the net rents and the profits thereof, and after her death to distribute the net use of the same as herein directed. I give and grant unto my said executor as trustee, full power to do all things necessary for the full and complete discharge of the trust herein created.

*Henry W. Conklin*, guardian, etc., for the appellants.

*George F. Danforth*, for the respondent.

LEWIS, J. :

George H. Thompson, of Rochester, died on the 26th day of June, 1884, possessed of various parcels of real estate in the city of Rochester, some of which were improved and productive. There were three lots owned by Mr. Thompson and known as lots 37, 45 and 55, which are represented upon a map attached to the case as outlying farms or pasture lands. These lots were located in the outskirts of the city of Rochester. They were vacant, unimproved and were yielding no revenue. The annual taxes and assessments upon these lots down to the time of the death of Mr. Thompson were comparatively small, not exceeding in the aggregate twenty dollars and fifty cents.

Mr. Thompson left a will, section one of which is as follows : " I give to my wife Carrie L. Thompson, the use during the term of her natural life of all of my real and personal estate, after deducting therefrom the sum necessary to keep such real estate in proper repair and to pay the taxes, assessments and liens thereon."

The will then makes a provision for an adopted son and an adopted daughter and makes the appellants residuary legatees. He left no natural children. He appointed Charles E. Morris executor of his will and a trustee for the purpose of carrying its provisions into effect, giving him power to take charge of the real estate during the life of the testator's wife, and directed that the net rents and profits therefrom should be paid by the trustee to his widow. He was residing at the time of his death with his family, consisting of his wife and adopted son in a dwelling-house located upon large grounds on one of the most valuable residence streets in the city of Rochester. He had been accustomed to live in a liberal manner, maintaining a somewhat expensive establishment, keeping a coachman and horses. It is apparent from his will that he desired and expected his widow to continue to occupy the homestead, which was owned by her, and live substantially in the same style and manner they had been living. By a codicil to his will he bequeathed to her a span of horses, single and double carriage, with the necessary harness, robes, blankets, etc.

Since the death of Mr. Thompson the residence district of the city of Rochester has extended rapidly out towards the three vacant lots mentioned. A large number of dwelling-houses have been

erected in the immediate vicinity of these vacant lots, and the lots are obviously increasing in value.

The city recently authorized and directed extensive improvements, consisting of the opening and improvement of streets through and adjacent to these lots, the building of sewers and side-walks, and assessments have been made upon the lots to pay for these improvements, amounting in the aggregate, including interest and expenses, to the sum of eight or nine thousand dollars. The trustee, Mr. Morris, not having funds with which to pay these assessments, presented a petition to the court asking for an order authorizing him to mortgage these lots, or authorizing him to sell such parts thereof as might be necessary for the purpose of raising the necessary funds to pay these assessments, and the order appealed from was made, authorizing the trustee to execute a separate mortgage on each of the lots for a sum sufficient to pay and discharge the assessments upon the lots respectively, together with the interest, fees and expenses, or if he should be unable to obtain the money by mortgaging the lots, the order authorized him to sell, at public or private sale, enough of each of the lots to raise a sum sufficient to make such payments. The appellants opposed the granting of the order.

It was made to appear to the Special Term justice that the income from the estate was barely sufficient to provide for the support of the widow and adopted son in the manner they had been accustomed to live prior to the death of Mr. Thompson, after deducting therefrom the ordinary taxes and assessments thereon, and the necessary repairs and expenses.

If a sufficient amount should be reserved from the income of the estate to pay these extraordinary expenses, there would not be sufficient left to maintain Mrs. Thompson and her adopted son in the occupation of the premises the testator desired her to occupy, unless a very radical change should be made in her style of living.

It appeared, upon the hearing of the motion, that the lots had already been sold by the city for the non-payment of some of these assessments, and unless the assessments are paid the lots will be lost to the estate. In providing in his will for the payment of taxes and assessments upon his estate out of the income therefrom, we think the testator had in mind the ordinary assessments to which his prop-

erty had been theretofore subjected, and not to such extraordinary assessments as have been made by the improvement of these lots. Had these assessments been imposed during the life of Mr. Thompson, he obviously would have raised the money by mortgaging or selling some part of his property.

It is not at all probable that he would have changed his style of living and so reduced his expenses as to have saved a sufficient amount out of his rents and income to pay these assessments; and we are at liberty to give such a construction to his will as to carry out what we believe to have been his intention. It is apparent that these lots are rapidly increasing in value. These improvements, we must assume, have added to their value a sum equal to the amount assessed upon them.

The improvements are of a character proper and necessary to prepare the lots to be used for residence purposes. The improvements enure to the benefit of the appellants and add nothing to the present income of the estate. An emergency has arisen not contemplated nor provided for by the testator in his will. Funds are required to preserve the estate. It was made to appear to the court that it was necessary and for the benefit of the estate to raise by mortgage thereon or by a sale thereof funds for the purpose of preserving or improving such estate as provided for by the act of 1886.

We think the facts presented justified the granting of the order, and it should be affirmed, with costs to the respondent and to the guardian *ad litem* of the infants, payable by the trustee out of the moneys raised by the mortgaging or sale of the land, and with costs to Henry W. Conklin as guardian *ad litem* for the infant defendants, Ralph Morris and others, to be paid by the trustee out of the moneys raised as aforesaid.

DWIGHT, P. J., concurred; MACOMBER, J., dissents.

Order appealed from affirmed, with costs of this appeal to the respondents and to the guardian *ad litem* of the infants, payable by the trustee out of the moneys raised by the mortgaging or sale of the land.